[Cite as *Bloor v. Barnes*, 2026-Ohio-1529.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

NEDRA BLOOR ET AL.,

Plaintiffs-Appellees,

v.

ALAN BARNES, ET AL.,

Defendants-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 CO 0025**

---

Civil Appeal from the
Columbiana County Municipal Court, Columbiana County, Ohio
Case No. 2024 ES 1

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

Nedra Bloor, *Pro se,* and Wayne Reed, *Pro se,* Plaintiffs-Appellees (No brief filed) and

*Atty. Carl J. King*, for Defendant-Appellant, Alan Barnes.

Dated:  April 28, 2026

**HANNI, J.**

{¶1}   Defendant-Appellant, Alan Barnes, appeals from Columbiana County Municipal Court judgments ruling that Plaintiffs-Appellees, Nedra Bloor and Wayne Reed, could deposit rent payments with the clerk of courts and denying Appellant's application for the release of those rent payments to him.  Because the evidence supports the trial court's decisions to allow Appellees to deposit their rent payments with the court and to then award those payments to Appellees, the trial court's decision is affirmed.

{¶2}   On March 6, 2024, Appellees (lessees) entered into a Lease with Appellant and Defendant, Alan E. Barnes Rental, LLC, (lessors) for a one-family dwelling in East Liverpool (the Lease).  The Lease stated it was for one year commencing March 1, 2024, and ending March 1, 2025.  Rent was set at $550 per month due on the first of the month. The Lease stated that if rent was more than five days late, there would be an added daily charge of $4 until paid.  Thus, it contained a five-day grace period.

{¶3}   On August 5, 2024, Appellees sent Appellant a text message as follows:

Good morning. Just so you know I've been in contact with a few agencies.  I needed to inform [you] of the issues in this home.  From the roof leaks I believe there is a black mold issue.  I gave them your number because they need your approval.  They will be calling you.  Also still haven't fixed the kitchen light nor have you caulked the bath tub.  Also the ceiling fans in the bedroom & kitchen are wobbling & I am afraid they may fall off like the living room did.  We had a snake in the house (which I took care of) which is because the spare bedroom floor is collapsing, the basement is getting a lot of water.  There are bare wires & wire[s] that were not installed properly[.]  These issues need to be addressed.  Thank you for understanding.  Whenever you need in please let me or Nedra know.  I don't want anybody in the home without one of us there.

(Sept. 3, 2024 Application by tenant to deposit rent with the clerk of court).

{¶4}   On September 3, 2024, Appellees filed a pro se "application by tenant to deposit rent with the clerk of court" in the trial court.  The application stated that Appellees'

rent was due September 5, 2024, in the amount of $550. Appellees deposited that amount with the court.

{¶5} On September 17, 2024, Appellant filed an application for release of rent. The application asserted Appellees had not been current in their rent when they filed this action. Appellant stated that per the terms of the Lease, rent was due September 1, 2024. Yet Appellees did not file this action and deposit their rent with the court until September 3, 2024.

{¶6} The trial court held a hearing on the matter on October 1, 2024. After hearing from Appellees and from Appellant's attorney, the trial court denied the application for release of rent.

{¶7} Appellees continued to deposit their monthly rent payments in to escrow with the court.

{¶8} On October 31, 2024, Appellant filed a notice of appeal with this Court. We dismissed that appeal because it was from an interlocutory order.

{¶9} On January 7, 2025, Appellees filed a request for a final ruling and requested all deposits with the court be returned to them.

{¶10} The trial court held an escrow hearing on March 25, 2025. At that time, the court held $2,750 in escrowed rent payments from Appellees. In its July 3, 2025 judgment entry, the court determined that Appellees had been current on their rent when they initiated the escrow proceedings. It also found Appellant had not made any improvements at the leased premises. So the court ordered that the funds held in escrow were to be returned to Appellees.

{¶11} Appellant filed a timely notice of appeal on August 4, 2025. Appellant now raises two assignments of error.

{¶12} Appellant's first assignment of error states:

THE TRIAL COURT ERRED IN ITS FINDING THAT THE DEFENDANT/APPELLANT BREACHED LANDLORD DUTIES UNDER O.R.C. §5321.07 IN AWARDING THE FUNDS HELD IN ESCROW RETURNED TO PLAINTIFFS/APPELLEES.

{¶13} Appellant argues the evidence was insufficient to support the trial court's decision and the decision was against the manifest weight of the evidence.

{¶14} Pursuant to R.C. 5321.07:

(A) If a landlord fails to fulfill any obligation imposed upon him by section 5321.04 of the Revised Code . . . or any obligation imposed upon him by the rental agreement, if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill any such obligations . . . the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance. The notice shall be sent to the person or place where rent is normally paid.

(B) If a landlord receives the notice described in division (A) of this section and after receipt of the notice fails to remedy the condition within a reasonable time considering the severity of the condition and the time necessary to remedy it, or within thirty days, whichever is sooner, and if the tenant is current in rent payments due under the rental agreement, the tenant may do one of the following:

(1) Deposit all rent that is due and thereafter becomes due the landlord with the clerk of the municipal or county court having jurisdiction in the territory in which the residential premises are located;

(2) Apply to the court for an order directing the landlord to remedy the condition . . .

(3) Terminate the rental agreement.

{¶15} R.C. 5321.04(A) sets out the landlord's obligations to its tenants. Those obligations include that the landlord:

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

(3) Keep all common areas of the premises in a safe and sanitary condition;

(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and

appliances, and elevators, supplied or required to be supplied by the landlord[.]

{¶16} Appellant argues here that Appellees were not current in their rent when they filed the application to deposit their rent with the court and they did not properly notify Appellant of the alleged defective property conditions. He asserts the alleged defective property conditions were not so severe as to warrant the return of all escrowed funds to Appellees. Appellant states that Appellees continued to reside at the leased premises until the end of the lease.

{¶17} In evaluating a manifest weight challenge in a civil case, this Court has stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12 (applying *Thompkins* to civil cases), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Id.* In determining whether a verdict is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences and determines whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Eastley*, 132 Ohio St.3d 328 at ¶ 20, citing *Thompkins*, 78 Ohio St.3d at 387.

> The power of the appellate court to reverse a judgment as being against the manifest weight of the evidence is to be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387. We make every reasonable presumption in favor of the judgment and any finding of facts; if the evidence is susceptible of more than one construction, we are bound to

interpret it in favor of the fact-finder's ruling. *Eastley*, 132 Ohio St.3d 328 at ¶ 21, citing *Seasons Coal Co. Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

*Concrete Creations & Landscape Design LLC v. Wilkinson*, 2021-Ohio-2508, ¶ 63-64 (7th Dist.).

{¶18} And in evaluating a sufficiency of the evidence claim we have pointed out, "[s]ufficiency involves the burden of production, whereas weight involves the burden of persuasion." *Admin Net Tech LLC v. Med. Imaging Diagnostics, LLC*, 2019-Ohio-3584, ¶ 13 (7th Dist.), citing *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring), *Eastley*, 2012-Ohio-2179, at ¶ 19. In other words, when evaluating sufficiency, the question is whether some rational trier of fact could have found the elements of the claim proven by the applicable standard upon evaluating the evidence in the light most favorable to the party asserting the claim. *Id*. at ¶ 14.

{¶19} Thus, we must examine the evidence and determine whether the trial court's judgment was supported by sufficient evidence and the weight of the evidence. The extent of the testimony was as follows.

{¶20} Appellant testified that there was a leak in the roof of the premises when Appellees moved in. (March 25, 2025 Tr. 13). Appellant stated he paid Appellee Reed to assist him in installing a new roof. (March 25, 2025 Tr. 14). Appellant stated that he fixed the ceiling fans in the bedroom and the kitchen. (March 25, 2025 Tr. 14-15). He acknowledged that there were bare wires hanging from a light fixture in the kitchen. (March 25, 2025 Tr. 15). As to the alleged mold issue, Appellant stated that the spots on the ceiling were "water spots" from when the roof was leaking. (March 25, 2025 Tr. 16).

{¶21} Appellee Reed testified that there was mold growing on the ceiling that had spread over time. (March 25, 2025 Tr. 21). He acknowledged helping Appellant install a new roof. (March 25, 2025 Tr. 22). But he stated that the water that had already gotten in and caused mold to grow inside on the ceilings. (March 25, 2025 Tr. 22). Appellee Reed also testified that the light fixture in the living room had fallen off. (March 25, 2025 Tr. 21). And he stated there were bare wires all throughout the house. (March 25, 2025 Tr. 24). Additionally, Appellee Reed testified the floor in one of the bedrooms was "falling through." (March 25, 2025 Tr. 24).

{¶22} Each of the items in need of repair that Appellee Reed testified to on March 25, 2025, was set out in the notice Appellees sent to Appellant on August 5, 2024. (Sept. 3, 2024 Application by tenant to deposit rent with the clerk of court). And according to Appellee Reed's testimony, Appellant failed to remedy these conditions. Thus, the evidence demonstrated that Appellant failed to remedy the conditions to keep the premises "in a fit and habitable condition."

{¶23} Appellant's testimony differed somewhat than Appellee Reed's testimony. But determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact who sits in the best position to judge this evidence by observing witness gestures, voice inflections, and demeanor. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984); *State v. DeHass*, 10 Ohio St.2d 230 (1967), syllabus. For this reason, we will not second-guess the trial court's credibility determination here. The trial court found Appellee Reed's testimony more credible.

{¶24} Based on the above, the trial court's judgment was supported by both the weight and sufficiency of the evidence.

{¶25} Accordingly, Appellant's first assignment of error is without merit and is overruled.

{¶26} Appellant's second assignment of error states:

THE TRIAL COURT CONCLUSION THAT THE PLAINTIFFS/APPELLEES WERE CURRENT AT THE FILING [sic].

{¶27} Appellant makes several allegations in this assignment of error.

{¶28} R.C. 5321.09 sets forth the defensive actions a landlord may take when their rent has been deposited with the clerk. It provides, in relevant part, as follows:

(A) A landlord who receives notice that rent due him has been deposited with a clerk of a municipal or county court pursuant to section 5321.07 of the Revised Code, may do any of the following:

(1) Apply to the clerk of the court for release of the rent on the ground that the condition contained in the notice . . . has been remedied. The clerk shall forthwith release the rent, less costs, to the landlord if the tenant gives written notice to the clerk that the condition has been remedied.

(2) Apply to the court for release of the rent on the ground that the tenant did not comply with the notice requirement of division (A) of section 5321.07 of the Revised Code, or that the tenant was not current in the rent payments due under the rental agreement at the time the tenant initiated rent deposits with the clerk of the court . . .

(3) Apply to the court for release of the rent on the ground that there was no violation of any obligation imposed upon the landlord . . . , or that the condition contained in the notice given pursuant to division (A) of section 5321.07 of the Revised Code has been remedied.

. . .

(C) If the court finds that there was no violation of any obligation imposed upon the landlord . . . , that the condition contained in the notice . . . has been remedied, that the tenant did not comply with the notice requirement . . . , or that the tenant was not current in rent payments at the time the tenant initiated rent deposits with the clerk of court under division (B)(1) of section 5321.07 of the Revised Code, the court shall order the release to the landlord of rent on deposit with the clerk, less costs.

**{¶29}** Appellant first contends that the Lease stated rent was due on the first of each month. Yet, Appellant points out, Appellees did not pay their rent into escrow until September 3, 2024, when they filed this action. Because Appellees did not pay September's rent by the first of the month, Appellant asserts they did not comply with R.C. 5321.07(B) and the trial court should not have accepted it.

**{¶30}** R.C. 5321.07(B)(1) provides that if a landlord receives a statutory notice about the conditions of the leased premises and fails to remedy the condition within a reasonable time or within 30 days, whichever is sooner, and "if the tenant is current in rent payments due under the rental agreement," then the tenant may deposit all rent with the clerk courts.

**{¶31}** In this case, it is true that the Lease itself states that rent is due on the first of each month. But Appellant testified the parties had agreed that rent would be paid by the fourth or fifth of the month. (March 25, 2025 Tr. 18). And Appellant testified that

Appellees were current in their rent when they filed this action. (March 25, 2025 Tr. 18). Thus, Appellees' rent was current when they filed this action.

**{¶32}** Next, Appellant points out that Appellees notified him of the conditions they asserted Appellant needed to repair in an August 5, 2024 text message. Appellant argues that pursuant to R.C. 5321.07(B), he was to be given 30 days to remedy the conditions. He points out Appellees did not provide the 30-days' notice since they filed this action on September 3, 2024.

**{¶33}** As set out above, R.C. 5321.07(B)(1) provides that if a landlord receives a statutory notice about the conditions of the leased premises, the landlord is to have "a reasonable time considering the severity of the condition and the time necessary to remedy it, or within thirty days, whichever is sooner," to remedy the conditions.

**{¶34}** As can be seen from the statutory language, 30 days is the longer of the two times in which to remedy the conditions. A "reasonable time" may be less than 30 days. Moreover, Appellees provided notice to Appellant on August 5, 2024. The testimony indicated that over seven months passed and Appellant had still not remedied the conditions.

**{¶35}** Finally, Appellant points out that Appellees sent the notice by text message instead of sending the notice to the "person or place where rent is normally paid" as is required by the statute.

**{¶36}** R.C. 5321.07(A) provides that the tenant may give the notice of conditions "in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance" and that "[t]he notice shall be sent to the person or place where rent is normally paid."

**{¶37}** In *Liggett v. Whitaker Properties*, 2010-Ohio-1610 (2d Dist.), the Second District addressed a situation where a tenant did not give written notice of an infestation problem to his landlord pursuant to R.C. 5321.07. There the court found:

> Although Whitaker is correct in his assertion that Liggett failed to provide written notice of the infestation pursuant to R.C. § 5321.07, the statute states only that "the tenant *may* give written notice to the landlord of the acts or omissions that constitute noncompliance." In the instant case, we find that Whitaker was put on notice that Liggett's apartment was

infested by roaches and mice on November 1, 2008, when he became the manager of the property. In fact, the record contains a citation issued on October 30, 2008, from the City Inspector advising Whitaker that he had until November 15, 2008, to take steps in order to rectify the problem.

(Emphasis added); *Id.* at ¶ 43.

**{¶38}** Likewise, in *Summers v. Lake of the Woods Apts.*, 2023-Ohio-1093, ¶ 19-20 (6th Dist.), the Sixth District found verbal notice of a water problem, followed six weeks later by written notice was adequate under the statute:

In the instant case, the undisputed evidence reveals that appellee verbally notified appellant of the deficient condition in her apartment "immediately" after it became not livable on June 20, 2021, and "repeatedly" thereafter. Appellant was clearly on notice of the continuing problem in August and in all of the months that followed, up until the hearing date more than eight months later. In response to appellee's immediate and repeated notice, appellant, rather than remedying the condition, merely suggested to appellee that she "place buckets around" and, further, offered some sort of "vacuuming technique" that reportedly was "not working."

Under the circumstances of this case, we conclude that the trial court did not abuse its discretion in rejecting appellant's claim that appellee, in filing her rent escrow application on August 4, 2021-- just five days after she provided written notice to appellant of the claimed problems, but approximately six weeks after verbally notifying appellant of the ongoing damage -- failed to allow appellant "reasonable time" to remedy the condition of her apartment.

**{¶39}** Similarly here, Appellees put Appellant on notice of conditions they alleged required repair.

**{¶40}** Appellee Reed testified that he paid the rent in cash. (Oct. 1, 2024 Tr. 14). The court found that Appellees sent Appellant a text message on August 5, 2024, specifying the conditions they alleged required repair. (Oct. 1, 2024 Tr. 5). So the "person

where rent is normally paid" requirement was met when Appellees texted Appellant on August 5, 2024.

**{¶41}** Additionally, Appellant's counsel also acknowledged Appellant received a certified letter with notice of the conditions on August 20, 2024. (Oct. 1, 2024 Tr. 3). Thus, Appellant clearly received Appellees' notice at the place where rent was normally paid.

**{¶42}** Moreover, the first hearing in this matter took place on October 1, 2024. At that hearing, more than 30 days had passed from both the text message and the certified letter. And Appellant's counsel stated that Appellant had not yet considered making any repairs. (Oct. 1, 2024 Tr. 6-7).

**{¶43}** Based on all of the above, Appellant's second assignment of error is without merit and is overruled.

**{¶44}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

Dickey, J., concurs.

Case No. 25 CO 0025

[Cite as *Bloor v. Barnes*, 2026-Ohio-1529.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Columbiana County Municipal Court, Columbiana County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**